No. 23-50582

# In the United States Court of Appeals for the Fifth Circuit

ROLANDO AMBRIZ,

*Plaintiff - Appellant,*

*v.*

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES,

*Defendant - Appellee.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## BRIEF FOR APPELLEE

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

AARON L. NIELSON
Solicitor General

KYLE D. HIGHFUL
Assistant Solicitor General
Kyle.Highful@oag.texas.gov

Counsel for Defendant - Appellee

## Certificate of Interested Persons

No. 23-50582

### Rolando Ambriz,

*Plaintiff - Appellant*,

*v.*

### Glenn Hegar, Comptroller of Public Accounts of the State of Texas, in his official and individual capacities,

*Defendant - Appellee.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellee, as a governmental party, need not furnish a certificate of interested persons.

/s/ Kyle D. Highful

### Kyle D. Highful

*Counsel of Record for*
*Defendant - Appellee*

i

## Statement Regarding Oral Argument

Because precedent from this Court shows that the district court lacked subject-matter jurisdiction, oral argument may be unnecessary. If, however, the Court hears argument, the Comptroller respectfully requests to participate.

# Table of Contents

Page

Certificate of Interested Persons .................................................................. i

Statement Regarding Oral Argument ........................................................... ii

Table of Authorities .................................................................................... iv

Introduction ................................................................................................. 1

Statement of Jurisdiction ............................................................................ 2

Issues Presented .......................................................................................... 2

Statement of the Case ................................................................................. 3

    I.   Statutory Background .......................................................................... 3

    II.  Factual and Procedural Background ..................................................... 5

Summary of the Argument ........................................................................... 8

Argument ................................................................................................... 10

    I.   The District Court Lacked Jurisdiction ............................................... 10

       A.  Sovereign immunity bars Ambriz's claims. ..................................... 10

          1.   The Eleventh Amendment bars takings claims against a
              State brought by its citizens in federal court. ........................... 11

          2.   The Supreme Court cases on which Ambriz relies do not
              show that he has overcome the State's immunity. ..................... 15

       B.  Ambriz's claims are not ripe. .......................................................... 21

       C.  Ambriz lacks standing. .................................................................... 22

    II.  Ambriz Failed to State a Takings Claim. ............................................. 26

       A.  Well-reasoned precedent supports the district court's ruling. ........... 26

       B.  Ambriz's authorities are distinguishable or wrongly decided. ............ 31

Conclusion ................................................................................................. 35

Certificate of Service ................................................................................. 36

Certificate of Compliance .......................................................................... 36

# Table of Authorities

Page(s)

**Cases:**

*74 Pinehurst LLC v. New York*,
    59 F.4th 557 (2d Cir. 2023) ............................................................. 15

*Arnett v. Combs*,
    508 F.3d 1134 (5th Cir. 2007) ..............................................12-14, 25

*Arnett v. Strayhorn*,
    515 F. Supp. 2d 690 (W.D. Tex. 2006) .................................. 12, 13, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................26

*Bay Point Props., Inc. v. Miss. Transp. Comm'n*,
    937 F.3d 454 (5th Cir. 2019) ............................................... 11, 12, 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................26

*Biden v. Nebraska*,
    143 S. Ct. 2355 (2023) .............................................................. 23, 25

*Brown v. Legal Found. of Wash.*,
    538 U.S. 216 (2003) .......................................................................... 31

*Cerajeski v. Zoeller*,
    735 F.3d 577 (7th Cir. 2013) ...................................................... 31-33

*Clark v. Strayhorn*,
    184 S.W.3d 906
    (Tex. App.—Austin 2006, pet. denied) .........................12, 27, 28, 30

*Collins v. Dep't of the Treasury*,
    83 F.4th 970 (5th Cir. 2023) ............................................................26

*Cunnius v. Reading Sch. Dist.*,
    198 U.S. 458 (1905) ..........................................................................26

*Cwik v. Topinka*,
    905 N.E.2d 300 (Ill. App. Ct. 2009) ................................................ 31

*Dani v. Miller*,
    374 P.3d 779 (Okla. 2016) ............................................................... 31

*Delaware v. New York*,
    507 U.S. 490 (1993) ..........................................................................27

*DM Arbor Court, Ltd. v. City of Houston*,
  988 F.3d 215 (5th Cir. 2021) ........................................................... 21
*Edelman v. Jordan*,
  415 U.S. 651 (1974) ........................................................................ 14
*EEE Mins., LLC v. North Dakota*,
  81 F.4th 809 (8th Cir. 2023) ............................................... 14, 15, 17
*Fontenot v. McCraw*,
  777 F.3d 741 (5th Cir. 2015) .......................................................... 17
*Goldberg v. Frerichs*,
  912 F.3d 1009 (7th Cir. 2019) ........................................................ 32
*Harbert Int'l, Inc. v. James*,
  157 F.3d 1271 (11th Cir. 1998) ...................................................... 15
*United States ex rel. Hernandez v. Team Fin., L.L.C.*,
  80 F.4th 571 (5th Cir. 2023) ........................................................... 22
*Highland Homes Ltd. v. State*,
  448 S.W.3d 403 (Tex. 2014) ............................................................. 3
*Jagnandan v. Giles*,
  538 F.2d 1166 (5th Cir. 1976) ........................................................ 17
*James v. Hegar*,
  No. 22-50828, 2023 WL 7890069
  (5th Cir. Nov. 16, 2023) ............................ 13-15, 17, 18, 22-26, 32
*Jim Olive Photography v. Univ. of Hous. Sys.*,
  624 S.W.3d 764 (Tex. 2021) ........................................................... 14
*Knick v. Township of Scott*,
  139 S. Ct. 2162 (2019) ................................................. 11, 12, 19, 21
*Kolton v. Frerichs*,
  869 F.3d 532 (7th Cir. 2017) .......................................................... 32
*Ladd v. Marchbanks*,
  971 F.3d 574 (6th Cir. 2020) .......................................................... 17
*Light v. Davis*,
  No. CV 22-611-CJB, 2023 WL 6295387 (D. Del. Sept. 27, 2023) .............. 22, 30
*Lopez v. City of Houston*,
  617 F.3d 336 (5th Cir. 2010) .......................................................... 21
*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................ 23

v

*Maron v. Patronis*,
No. 4:22cv255-RH-MAF (N.D. Fla. Sept. 5, 2023) .................................. 30, 33

*McMurtray v. Holladay*,
11 F.3d 499 (5th Cir. 1993) ........................................................ 11

*Merritts v. Richards*,
62 F.4th 764 (3d Cir. 2023) ........................................................ 17

*Moss v. Princip*,
913 F.3d 508 (5th Cir. 2019) ....................................................... 22

*O'Connor v. Eubanks*,
83 F.4th 1018 (6th Cir. 2023) ..................................................... 15

*Pakdel v. City & Cnty. of San Francisco*,
141 S. Ct. 2226 (2021) .............................................................. 21

*Papasan v. Allain*,
478 U.S. 265 (1986) ................................................................. 16

*PennEast Pipeline Co. v. New Jersey*,
141 S. Ct. 2244 (2021) ............................................................ 18-20

*Seminole Tribe of Fla. v. Fla. Dep't of Revenue*,
750 F.3d 1238 (11th Cir. 2014) ................................................... 17

*Seven Up Pete Venture v. Schweitzer*,
523 F.3d 948 (9th Cir. 2008) ...................................................... 15

*Simon v. Weissmann*,
301 F. App'x 107 (3d Cir. 2008) ................................................ 29, 30

*Skatemore, Inc., v. Whitmer*,
No. 22-372, 2022 WL 12641100 (U.S. Oct. 17, 2022) ................................ 19, 20

*Soc'y of Separationists, Inc. v. Herman*,
959 F.2d 1283 (5th Cir. 1992) ..................................................... 23

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ................................................................ 23

*Tawakkol v. Vasquez*,
81 F.4th 397 (5th Cir. 2023) ............................................... 10, 14, 16

*Taylor v. Westly*,
402 F.3d 924 (9th Cir. 2005) ...................................................... 13

*Texaco, Inc. v. Short*,
454 U.S. 516 (1982) ......................................... 9, 27-29, 33, 34

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ............................................................. 23

*Tyler v. Hennepin County*,
    598 U.S. 631 (2023)................................................................34
*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
    449 U.S. 155 (1980)..........................................................28-30
*Whole Woman's Health v. Jackson*,
    595 U.S. 30 (2021) .............................................................. 16
*Williams v. Utah Dep't of Corr.*,
    928 F.3d 1209 (10th Cir. 2019)........................................... 12
*Ex parte Young*,
    209 U.S. 123 (1908) ......................................................... 15-18
*Zito v. N.C. Coastal Res. Comm'n*,
    8 F.4th 281 (4th Cir. 2021)................................................. 15

**Constitutional Provisions, Statutes, and Rules:**

U.S. Const.:
    amend. V ....................................... 1, 2, 6, 11, 12, 14, 19, 20, 22, 29, 31
    amend. XI ................................................. 7, 8, 10-12, 14-20
    amend. XIV.............................................. 1, 2, 6, 12, 20, 22, 27, 29
28 U.S.C.:
    § 1291 .......................................................................................2
    § 2201 ...................................................................................... 6
    § 2202 ...................................................................................... 6
42 U.S.C. § 1983 ........................................................................... 6
Fla. Const. art. x, § 6(a) .............................................................. 6
Mich. Const. art. X ..................................................................... 19
Tex. Const. art. I, § 17 ................................................................ 6
Fla. Stat.:
    § 717.124 .................................................................................. 6
    § 717.124(4)(a) ........................................................................ 6

Tex. Prop. Code:

§ 72.101(a) ................................................................. 2, 3, 25, 33

§ 74.101(a) ...................................................................................... 3

§ 74.1011(a) .................................................................................... 4

§ 74.301 ........................................................................................... 4

§ 74.307 ........................................................................................... 2

§ 74.401 ........................................................................................... 4

§ 74.301(a) .................................................................................. 2, 4

§ 74.302(a)(2) ................................................................................. 4

§ 74.302(a)(3) ................................................................................. 4

§ 74.304(a) ...................................................................................... 4

§ 74.307(a)(1) ................................................................................. 4

§ 74.307(b) ...................................................................................... 4

§ 74.401(a) ...................................................................................... 4

§ 74.401(d) ...................................................................................... 4

§ 74.401(e) ...................................................................................... 4

§ 74.402 ........................................................................................... 4

§ 74.501 ...................................................................................... 2, 5

§ 74.501(a) ...................................................................................... 5

§ 74.501(b) ...................................................................................... 5

§ 74.501(c) .................................................................................... 21

§ 74.502 ........................................................................................... 5

§ 74.502(a) ...................................................................................... 5

§ 74.502(b) ...................................................................................... 5

§ 74.504(a) ...................................................................................... 5

§ 74.504(b) ...................................................................................... 5

§ 74.506(a) ...................................................................................... 5

§ 74.506(c) ...................................................................................... 5

§ 74.601(b) ................................................................................. 2, 16

§ 74.601(b)(1) ................................................................................. 4

§ 74.601(b)(2) ................................................................................. 4

§ 74.601(b)(4) ................................................................................. 4

Fed. R. Civ. Proc.:

12(b)(1) ............................................................................................ 7

12(b)(6) ...................................................................................... 7, 26

# Introduction

Property sometimes goes unclaimed and unused year after year. Rather than allow that property to forever remain in an unproductive limbo, Texas law provides that it be delivered to the Comptroller, who deposits it into the State's general revenue fund and invests it for the benefit of all Texans. But the law also allows the owner to come forward and reclaim the property.

According to appellant Rolando Ambriz, the Comptroller's website shows that the State has $25.00 of his unclaimed property. This case is not about the $25.00, however, which Ambriz has made no attempt to reclaim. Instead, it is about interest that the property may have theoretically earned in the meantime. He alleges that the failure of Texas law to require the Comptroller to turn over interest on unclaimed property violates the Fifth Amendment as applied to the States by the Fourteenth Amendment.

Admittedly, courts around the country have reached different results when considering the relationship between the Takings Clause and state unclaimed-property laws. But well-reasoned opinions from both federal and state courts show the way forward. Sovereign immunity bars claims like Ambriz's which, however they are worded, essentially seek to recover money from the State's treasury. In addition, Ambriz's claims are unripe and he lacks standing to assert them. He has not alleged or shown that the property at issue here is his or that he would be able to demonstrate ownership of it. Moreover, any loss of the property's use is attributable to Ambriz's own neglect, not to the Comptroller's compliance with a law aimed at preserving unclaimed property and benefiting the State's citizens. And even if Ambriz could

overcome all these jurisdictional hurdles, his claims would still fail because, as the district court correctly held, his allegations do not demonstrate a compensable taking. Accordingly, this Court should hold that the district court lacked jurisdiction or, in the alternative, affirm the district court's dismissal for failure to state a claim on which relief could be granted.

## Statement of Jurisdiction

The district court lacked subject-matter jurisdiction for the reasons given below in Part I of the Argument. This Court has jurisdiction over Ambriz's appeal from a final judgment under 28 U.S.C. section 1291.

## Issues Presented

Under Texas law, unclaimed property is delivered to the Comptroller, who deposits it into the State's general revenue fund. *See* Tex. Prop. Code §§ 72.101(a), 74.301(a), 74.601(b). The Comptroller maintains a publicly available list of unclaimed property, *id.* § 74.307, and provides a process by which the owner can reclaim the property, *id.* § 74.501. Here, Ambriz alleges that the Comptroller's website shows that he has $25.00 in unclaimed property. ROA.17. Ambriz has not alleged that the unclaimed property is actually his or that he has any recollection of ever owning it. *See generally* ROA.8-20; *see also* Appellant's Br. 21-22. Yet he claims that Texas law violates the U.S. Constitution's Takings Clause, U.S. Const. amends. V, XIV, because it does not provide for the payment to Ambriz of any interest that may have been earned on the property during the years in which Ambriz neglected it. ROA.20-22. The district court dismissed Ambriz's claims. ROA.274-76.

The issues presented are:

1. Did the district court lack subject-matter jurisdiction because:

    A.  sovereign immunity bars Ambriz's claims;

    B.  Ambriz's claims are not ripe; or

    C.  Ambriz lacks standing?

2. Did the district court correctly hold that Ambriz failed to state a claim for which relief can be granted because the State's use of unclaimed property was not a compensable taking?

## Statement of the Case

## I.  Statutory Background

The Texas Unclaimed Property Act ("the Act") "defines property that is presumed abandoned and prescribes a process for reporting and delivering it to the Comptroller to be held perpetually for the owner." *Highland Homes Ltd. v. State*, 448 S.W.3d 403, 408 (Tex. 2014). Under the Act,

> personal property is presumed abandoned if, for longer than three years: (1) the location of the owner of the property is unknown to the holder of the property; and (2) according to the knowledge and records of the holder of the property, a claim to the property has not been asserted or an act of ownership of the property has not been exercised.

Tex. Prop. Code § 72.101(a). Each year, a holder of property presumed abandoned must file a report of that property with the Comptroller. *Id.* § 74.101(a). If the property is valued at more than $250, the holder must provide notice to the owner that "(1) the holder is holding the property; and (2) the holder may be required to deliver

the property to the comptroller on or before July 1 if the property is not claimed." *Id.* § 74.1011(a).

The holder of the property delivers the property to the Comptroller along with the report. *Id.* § 74.301(a). The property is also accompanied by a statement that, among other things, "the existence and location of the listed owners are unknown to the holder" and that "the listed owners have not asserted a claim or exercised an act of ownership with respect to the owner's reported property." *Id.* § 74.302(a)(2), (3). Once property is delivered to the Comptroller, "the state shall assume custody of the property and responsibility for its safekeeping." *Id.* § 74.304(a). The Comptroller maintains "an alphabetical list of the names and last known addresses of the owners listed in the reports and the amount credited to each account." *Id.* § 74.307(a)(1). That list is publicly available. *Id.* § 74.307(b).

The Comptroller "may sell at public sale any personal property, other than money and marketable securities, delivered to the comptroller in accordance with Section 74.301." *Id.* § 74.401(a). The Comptroller must publish prior notice of the sale. *Id.* § 74.402. The Comptroller may also destroy property if he determines that it "is not marketable or has insubstantial commercial value." *Id.* § 74.401(d). The Act provides that "[a] person may not maintain any action or proceeding against the state, an officer of the state, or the holder of property because of an action taken by the comptroller under [section 74.401]." *Id.* § 74.401(e). The Act requires the Comptroller to "deposit to the credit of the general revenue fund" unclaimed money, the proceeds of the sale of unclaimed property, and "any income derived from investments of the unclaimed money." *Id.* § 74.601(b)(1), (2), (4).

The Act also provides a process by which the owner can claim property presumed abandoned. The owner may file a claim with the Comptroller, *id.* § 74.501, or with a holder of the property who is not the Comptroller, *id.* § 74.502. If the claim is filed with the Comptroller, the Comptroller "shall review the validity of each claim," *id.* § 74.501(a), and, "[i]f the comptroller determines that a claim is valid, the comptroller or the comptroller's authorized agent shall approve the claim," *id.* § 74.501(b). If the claim is approved, the Comptroller pays the claim, delivers the personal property to the claimant, or pays to the claimant the proceeds of the property's sale, as appropriate. *Id.* § 74.501(b). If, on the other hand, the claim is filed with another holder, the holder may pay the claim and be reimbursed by the Comptroller. *Id.* § 74.502(a), (b).

The Comptroller "may hold a hearing and receive evidence concerning a claim." *Id.* § 74.504(a). If a hearing is held, the Comptroller "shall sign the statement of the findings and the decision on the claim. The statement shall report the substance of the evidence heard and the reasons for the decision." *Id.* § 74.504(b). The claimant "may appeal the decision of the comptroller on the claim before the 61st day after the day on which it was rendered." *Id.* § 74.506(a). The Legislature has waived the Comptroller's immunity from suit for such an appeal. *Id.* § 74.506(c).

## II.  Factual and Procedural Background

Ambriz filed a class-action complaint against the Comptroller in October 2022. ROA.8. Ambriz alleged that the Comptroller holds in custody a "savings account" in the amount of $25.00 apparently belonging to Ambriz. ROA.17. He further alleged that he intends to claim his property "as soon as he has obtained a final ruling from

this litigation." ROA.18. According to Ambriz, the Comptroller "holds more than $7 billion in Unclaimed Property in custody." ROA.18.

On behalf of himself and as a class representative, Ambriz claimed that "Section 717.124(4)(a) of the TUPL violates the Fifth Amendment as applied to the State by the Fourteenth Amendment because it requires the Comptroller to refuse to pay property owners for the public use by the State of their Unclaimed Property when they reclaim that property." ROA.21. (Presumably, this and other references to "Section 717.124(4)(a)" in Ambriz's complaint refer to a Florida unclaimed-property law not at issue here. *See* Fla. Stat. § 717.124.) Under 42 U.S.C. section 1983 and 28 U.S.C. section 2201, Ambriz sought "a declaration that Section 717.124(4)(a) of the TUPL prohibiting the payment of the time value of [Ambriz's and the class's] property" violated the Fifth Amendment and section 1983 and that the Comptroller "must pay them just compensation for the use of their property while it was in his custody." ROA.21. Ambriz asked the district court to declare the appropriate measure of just compensation to which he and the class are entitled. ROA.21-22. Invoking 28 U.S.C. section 2202, he further sought an injunction requiring the Comptroller "to pay just compensation to Plaintiff and Class members who reclaim their property in the future." ROA.22. Ambriz also claimed that the Act is unconstitutional "under article x, section 6(a)," ROA.22 (capitalization and emphasis omitted), presumably a reference to the Florida Constitution, and under article I, section 17 of the Texas Constitution, ROA.22-23. Among other things, Ambriz sought "[a] judgment declaring the measure of just compensation that the Comptroller must pay," ROA.24,

and "[a] judgment enjoining the Comptroller to pay just compensation pursuant to the declared measure thereof," ROA.25.

The Comptroller filed a motion to dismiss. ROA.89-109. He argued that the court should dismiss the case under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction because sovereign immunity bars Ambriz's claims, ROA.93-99, and because Ambriz lacks standing, ROA.99-102. The Comptroller further argued that the court should dismiss the case under Rule 12(b)(6). ROA.102. Specifically, the Comptroller argued that Ambriz failed to state a claim for which relief can be granted because there is no "taking" of unclaimed property under the Act. ROA.103-07.

The district court referred the matter to a magistrate judge. ROA.152. The magistrate judge's report and recommendation concluded that: (1) the Eleventh Amendment barred consideration of Ambriz's claims based on the Texas Constitution, ROA.196; (2) sovereign immunity did not bar Ambriz's federal claims for prospective declaratory or injunctive relief, ROA.198; (3) sovereign immunity barred Ambriz's federal claims to the extent they sought "specific damages or a declaration that he or class members are owed specific damages under the statute," ROA.198; (4) Ambriz had standing, ROA.198-202; and (5) Ambriz failed to state a claim for which relief can be granted because "Ambriz's assertion that the State's retention of any interest on his unclaimed property fails to state a takings clause claim," ROA.206. Accordingly, the magistrate judge recommended that the district court dismiss without prejudice Ambriz's state-law claims and "any federal claim seeking retrospective relief or damages," deny the motion to dismiss to the extent it

challenged subject-matter jurisdiction, and dismiss with prejudice "Ambriz's prospective declaratory and injunctive claims." ROA.206.

Both the Comptroller and Ambriz filed objections. ROA.208-15, 216-33. The district court overruled those objections and adopted the magistrate judge's report and recommendation. ROA.274-75. The court then signed a final judgment dismissing Ambriz's claims, ROA.276, and Ambriz appealed, ROA.277-79.

## Summary of the Argument

**I.**   The district court lacked subject-matter jurisdiction for three reasons. *First*, Texas's sovereign immunity bars Ambriz's claims. As precedent from this Court and its sister courts shows, the Eleventh Amendment does not allow States to be sued by their citizens in federal courts for takings claims. And Ambriz cannot sidestep that well-established principle by recasting his takings claim as a request for prospective declaratory and injunctive relief.

*Second*, Ambriz's claims are not ripe because the Comptroller has made no final decision that could constitute a taking. Not only has Ambriz made no attempt to reclaim property he found listed on the Comptroller's website, he has not even alleged that the property is his or that he could demonstrate ownership as required by law. His suggestions that the Comptroller will pay him the value of the unclaimed property but withhold interest (of some undefined amount) are merely speculative.

*Third*, Ambriz has not met his burden to show standing. He has not shown any imminent, concrete harm. This Court's precedent forecloses his argument that he suffers an ongoing injury because the Comptroller has yet to pay him just compensation. And even assuming that the unclaimed property at issue here is his and will be

returned to him without interest, any harm Ambriz may have suffered resulted from his own neglect and failure to use his property. Ambriz should not be allowed to blame the Comptroller for making beneficial use of property that Ambriz himself left in obscurity.

**II.** Assuming that the district court had jurisdiction, it correctly determined that Ambriz failed to state a claim for which relief could be granted. Ambriz has neither challenged the Act's presumption that the property was abandoned nor alleged that the Comptroller violated his due-process rights by receiving the unclaimed property from its holder. His sole contention is that the Constitution requires the Comptroller to pay him interest on the unclaimed property. That argument is at odds with the principle discussed by the Supreme Court in *Texaco, Inc. v. Short*, and applied by courts around the nation, that a State may make use of otherwise unused property without paying just compensation. 454 U.S. 516, 530 (1982). And even if that general rule did not apply here, Ambriz still failed to allege a compensable taking because his complaint does not demonstrate that the unclaimed property was earning interest when it was delivered to the Comptroller or that it would have earned interest absent the State's unclaimed-property law.

The cases on which Ambriz relies in arguing to the contrary are either distinguishable or wrongly decided. His argument rests primarily on a line of cases from the Seventh Circuit. But those decisions misread *Texaco* and give too much weight to whether a law effects a total escheatment or allows title to remain with the owner of the unclaimed property. This Court should faithfully apply *Texaco* and hold that Texas's failure to pay interest on unclaimed property is not a compensable taking.

**ARGUMENT**

## I.  The District Court Lacked Jurisdiction.

The district court erred in not dismissing all Ambriz's claims for want of jurisdiction. Texas's sovereign immunity bars takings claims brought by one of its citizens in federal court. Even if it did not, Ambriz's claims are not ripe. He has not initiated a claim proceeding under the Act or alleged facts showing that his claim would succeed. And Ambriz lacks standing because he has not demonstrated a concrete, imminent harm that is traceable to the Comptroller.

### A.  Sovereign immunity bars Ambriz's claims.

"Sovereign immunity under the Eleventh Amendment precludes suits by private citizens against states in federal court." *Tawakkol v. Vasquez*, 81 F.4th 397, 400 (5th Cir. 2023). Immunity "extends not only to the state itself, but also to claims against 'state officials' in their official capacity when the state is the real party in interest." *Id.* Because sovereign immunity is jurisdictional, it can be raised at any time. *Id.* at 400 n.2.

The district court held that sovereign immunity barred Ambriz's state-law claims. ROA.196. That holding was correct, and Ambriz does not challenge it on appeal. But the court erred in holding that sovereign immunity does not bar all Ambriz's federal claims. ROA.198. That is because sovereign immunity prohibits takings claims against a State brought by its citizens in federal court. And none of the cases on which Ambriz relies shows otherwise.

10

1. **The Eleventh Amendment bars takings claims against a State brought by its citizens in federal court.**

This Court has squarely held that sovereign immunity bars a takings claim brought by a citizen against his State in federal court. In *McMurtray v. Holladay*, the plaintiffs argued that "when the state extinguished their property rights, the Act constituted a 'taking,' and they should therefore be justly compensated pursuant to the Fifth Amendment." 11 F.3d 499, 504 (5th Cir. 1993). The Court rejected that argument, holding instead that "[e]ven if the [state law] amounted to a 'taking' under the Fifth Amendment," the plaintiffs' claim "would be barred because under the Eleventh Amendment, a citizen may not sue his own state in federal court." *Id.*

The Court reaffirmed this principle in *Bay Point Properties, Inc. v. Mississippi Transportation Commission*, where a property owner brought a takings claim against a state agency and various state officials in federal court. 937 F.3d 454, 456 (5th Cir. 2019). The district court granted the State's motion to dismiss on sovereign-immunity grounds, and this Court affirmed. *Id.* The Court rejected the property owner's argument that the Supreme Court's decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), altered the "bedrock principles of sovereign immunity law." *Bay Point Properties*, 937 F.3d at 456. The Supreme Court did not consider sovereign immunity in *Knick*, nor did it cast doubt on "longstanding sovereign immunity principles protecting states from suit in federal court." *Id.* Rather, *Knick* "simply put takings claims against state governments on equal footing with claims against the federal government." *Id.* "And nobody disputes that takings claims against the federal government require" a waiver of sovereign immunity. *Id.* at 456-57.

The Court favorably cited the Tenth Circuit's decision in *Williams v. Utah Department of Corrections*, 928 F.3d 1209 (10th Cir. 2019). *Bay Point Properties*, 937 F.3d at 457. In *Williams*, an inmate alleged that the State "failed to pay interest on prison accounts in violation of the Takings Clause of the Fifth Amendment." 928 F.3d at 1211. The Tenth Circuit held that sovereign immunity barred the takings claim, which could have been brought in state court. *Id.* at 1213-14. And that determination was consistent with *Knick*, which did not address "Eleventh Amendment immunity." *Id.* at 1214.

In addition to holding that sovereign immunity bars takings claims in general, this Court has affirmed a district court's determination that the Eleventh Amendment barred a takings claim attacking the very Act challenged here. In *Arnett v. Strayhorn*, the plaintiff sought class certification and argued that the Comptroller's failure to turn over revenue allegedly earned on unclaimed property violated the Fifth and Fourteenth Amendments. 515 F. Supp. 2d 690, 693 (W.D. Tex. 2006), *aff'd sub nom. Arnett v. Combs*, 508 F.3d 1134 (5th Cir. 2007) (per curiam). The Comptroller argued that the Eleventh Amendment barred the plaintiff's claim for monetary relief. *Id.* at 694. The plaintiff countered that the unclaimed property "never becomes the property of the state, but is maintained in trust for the true owner." *Id.* at 695.

The district court agreed with the Comptroller that sovereign immunity barred the claim. *Id.* at 697. The court emphasized that the unclaimed property was deposited into the State's general revenue fund and was subject to appropriation by the Legislature. *Id.* at 695-96. It cited *Clark v. Strayhorn*, 184 S.W.3d 906, 912 (Tex. App.—Austin 2006, pet. denied), in which a Texas court rejected a Takings Clause

challenge to the Act. *Arnett*, 515 F. Supp. 2d at 696. And it distinguished *Taylor v. Westly*, 402 F.3d 924, 936 (9th Cir. 2005), a case in which the Ninth Circuit held that sovereign immunity did not bar a challenge to the State's unclaimed-property law, on the ground that under California's law, unlike Texas's, the official held the plaintiff's property in trust. *Arnett*, 515 F. Supp. 2d at 696. The court therefore granted the Comptroller's motion for partial summary judgment based on sovereign immunity. *Id.* at 699. This Court affirmed the district court's order. *Arnett*, 508 F.3d at 1134. And it expressly adopted the district court's reasoning. *Id.*

Earlier this month, this Court reaffirmed "the *Arnett* line of cases." *James v. Hegar*, No. 22-50828, 2023 WL 7890069, at *4 (5th Cir. Nov. 16, 2023). In *James*, the plaintiffs filed a class action complaint alleging that the Comptroller "misused" the Act to take property that they had not "abandoned." *Id.* at *2. The district court dismissed most of their claims but allowed claims for prospective injunctive and declaratory relief to proceed. *Id.* at *3. After discussing the *Arnett* cases, *id.* at *4-5, this Court held that sovereign immunity barred the plaintiffs' remaining claims because they failed to allege an ongoing violation of federal law, *id.* at *6.

Here, Ambriz has asserted a takings claim. *E.g.*, ROA.8-9, 20-22, 24. And he sued an executive officer in his official capacity. Although this Court's official caption indicates that Ambriz sued the Comptroller in both his official and individual capacities, the record reflects that the Comptroller was sued only in his official capacity. *E.g.*, ROA.8, 13, 193, 274, 276, 277. Moreover, the magistrate judge's report and recommendation, which the district court adopted, recognized that the Comptroller was entitled to sovereign immunity absent a waiver or exception. ROA.195-

96. And Ambriz has not argued below or in this Court that the Comptroller is not entitled to sovereign immunity because he was sued in his individual capacity. *See EEE Mins., LLC v. North Dakota*, 81 F.4th 809, 816 (8th Cir. 2023) (stating that "an official is deemed to be sued in his official capacity only, unless a plaintiff expressly and unambiguously names the defendant in his individual capacity"). Accordingly, Ambriz's suit against the Comptroller is essentially a suit against the State and is thus barred by sovereign immunity. *See Tawakkol*, 81 F.4th at 400; *Arnett*, 508 F.3d at 1134; *see also Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). If Ambriz had a viable takings claim (which he did not, *see infra*, Part II), he could have brought it in state court, where it would not have been barred by sovereign immunity. *See, e.g.*, *Jim Olive Photography v. Univ. of Hous. Sys.*, 624 S.W.3d 764, 771-72 (Tex. 2021) (considering a takings claim brought under both the Fifth Amendment and the Texas Constitution and noting that the State is not immune to a properly pleaded takings claim brought in Texas court), *cert. denied*, 142 S. Ct. 1361 (2022).

Ambriz argues that *Arnett* and *James* are irrelevant here because he "does not seek monetary damages and has not yet claimed his property such that he continues to suffer harm from the loss of the time value of his property." Appellant's Supp. Br. 2. But Ambriz *did* seek money from the State: he asked the district court to "declar[e] the measure of just compensation that the Comptroller must pay to [Ambriz]" and to "enjoin[] the Comptroller to pay just compensation pursuant to the declared measure thereof." ROA.24-25; *see* ROA.21-22 (suggesting measures of just

compensation that the court could use). And this Court has rejected the argument that a takings claim alleges an ongoing injury because compensation has not yet been paid. *James*, 2023 WL 7890069, at *5-6.

Moreover, just last month the Sixth Circuit considered a claim very similar to Ambriz's. In *O'Connor v. Eubanks*, Michigan's Uniform Unclaimed Property Act did not require payment of interest that the plaintiff's property earned after the State took custody of it. 83 F.4th 1018, 1021 (6th Cir. 2023) (per curiam). The Sixth Circuit held that the Eleventh Amendment barred the plaintiff's takings claim. *Id.* at 1024. And that decision is consistent with precedent from numerous other circuits. *See, e.g.*, *EEE Minerals*, 81 F.4th at 816; *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023); *Zito v. N.C. Coastal Res. Comm'n*, 8 F.4th 281, 288 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 465 (2021); *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1279 (11th Cir. 1998).

### 2. The Supreme Court cases on which Ambriz relies do not show that he has overcome the State's immunity.

Ambriz relies on two Supreme Court cases to argue that sovereign immunity does not bar his claims, but that reliance is misplaced in each instance.

*First*, Ambriz argues that "the Eleventh Amendment does not bar [his] federal claims because they fall within the exception for prospective relief established by *Ex parte Young*, 209 U.S. 123 (1908)." Appellant's Br. 24. In *Ex parte Young*, the Supreme Court "carved out" an exception to the States' sovereign immunity to permit "a plaintiff to seek an injunction 'in federal court [to] prevent[ ] state executive

officials from enforcing state laws that are contrary to federal law.'" *Tawakkol*, 81 F.4th at 401 (alterations in original, quoting *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021)); *see Ex parte Young*, 209 U.S. at 159-60. A plaintiff relying on the *Ex parte Young* exception "generally must satisfy two prongs." *Tawakkol*, 81 F.4th at 401. The plaintiff "must demonstrate that he is seeking proper relief—declaratory or injunctive relief to prevent an ongoing violation of federal law." *Id.* And the plaintiff's suit "must name the proper defendant—generally the individual tasked with enforcing the challenged act." *Id.* The Supreme Court has "instructed that the exception must be narrowly construed." *Id.* (quotation marks omitted). And courts should "look to the substance rather than to the form of the relief sought." *Papasan v. Allain*, 478 U.S. 265, 279 (1986).

Ambriz's argument stalls on *Ex parte Young*'s first prong. He cannot avoid the Eleventh Amendment merely by casting his takings claim as one for prospective declaratory and injunctive relief. *See* ROA.24. Allowing that sort of artful pleading to circumvent a State's immunity would render the Eleventh Amendment meaningless in the takings context. There is no significant difference between a federal-court judgment awarding money to the plaintiff and a federal-court judgment ordering a state official to pay money to the plaintiff or declaring that the official must pay the money. Whether the court awarded damages to Ambriz or ordered the Comptroller to pay him, the result would be exactly the same—Texas would be forced by the federal judiciary to take money out of its general revenue fund and give it to Ambriz. *See* Tex. Prop. Code § 74.601(b).

This Court and her sister courts have rightly rejected such thinly veiled attempts to breach the States' coffers. *E.g.*, *Fontenot v. McCraw*, 777 F.3d 741, 754-55 (5th Cir. 2015) (rejecting the plaintiffs' argument that the State "engages in a continuing violation by refusing to return their property" and holding that sovereign immunity barred their refund claims); *Jagnandan v. Giles*, 538 F.2d 1166, 1169 (5th Cir. 1976) (holding that "the Eleventh Amendment bars suits in federal court to recover excess tuition paid pursuant to an unconstitutional statute"); *see also, e.g.*, *EEE Minerals*, 81 F.4th at 816 ("[The plaintiff] simply repackages her claim for monetary relief as a request for an injunction that cures past injuries and requires the payment of just compensation. This reformulated request for retrospective relief is likewise barred by the Eleventh Amendment."); *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (noting that "a reparative injunction . . . cannot be fairly characterized as prospective"); *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (holding that sovereign immunity barred the plaintiffs' claims for injunctive and declaratory relief and explaining that "an order [the plaintiffs] can use to require Ohio to pay them for its alleged taking of their property" was not "a proper workaround to the States' sovereign immunity"); *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1243-44 (11th Cir. 2014) (explaining that a plaintiff "cannot wiggle into [the *Ex parte Young*] exception through creative pleading" by seeking relief that "is equitable in name only").

And in *James*, this Court recently rejected the very same argument that Ambriz makes here. Ambriz argues that the injury he has suffered "is ongoing because the taking without just compensation continues until the Comptroller finally pays the

just compensation." Appellant's Br. 17. "In fact, the *Arnett* line of cases reaches the opposite conclusion[.]" *James*, 2023 WL 7890069, at *5. Allegations that the defendant has not paid just compensation are "insufficient to show an ongoing violation of federal law and invoke the *Ex parte Young* exception to Eleventh Amendment sovereign immunity." *Id.*

*Second*, Ambriz acknowledges the Court's holding in *Bay Point Properties* but argues that it has been superseded by the Supreme Court's decision in *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244 (2021). Appellant's Br. 32. In *PennEast*, a pipeline company applied to the Federal Energy Regulatory Commission for a certificate to construct a pipeline that stretched from Pennsylvania to New Jersey. 141 S. Ct. at 2253. The commission granted the certificate. *Id.* The pipeline company filed suit in a federal district court in New Jersey seeking to use the federal eminent-domain power to obtain rights-of-way along the pipeline route. *Id.* The State of New Jersey asserted interests in parcels that the company sought to condemn. *Id.* The State moved to dismiss based on its sovereign immunity. *Id.* The district court denied the motion, but the Third Circuit vacated the order in relevant part. *Id.*

The Supreme Court explained that the federal government's eminent-domain power extends to property within States and that the Government can delegate that power to private parties. *Id.* at 2254-57. The Court then held that "the States consented in the plan of the Convention to the exercise of federal eminent domain power, including in condemnation proceedings brought by private delegatees." *Id.* at 2259. That is, "[t]he plan of the Convention contemplated that States' eminent domain power would yield to that of the Federal Government so far as is necessary

to the enjoyment of the powers conferred upon it by the Constitution." *Id.* (quotation marks omitted). And the Court reasoned that the ability of delegatees to exercise the federal eminent-domain power must include the ability to bring condemnation proceedings against States. *Id.* at 2260.

Ambriz argues that *PennEast* means that the States have consented to be sued by private citizens for takings claims under the Fifth Amendment. Appellant's Br. 31-33. But the Sixth Circuit has correctly recognized that it does not. In *Skatemore, Inc. v. Whitmer*, operators of bowling alleys and roller-skating rinks sued Michigan's governor and other officials "alleging that various orders limiting the use of Plaintiffs' properties early in the COVID-19 pandemic constituted an unconstitutional taking in violation of the Fifth Amendment of the U.S. Constitution and Article X of the Michigan Constitution." 40 F.4th 727, 729 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 527 (2022). The district court held that sovereign immunity barred the plaintiffs' claims and dismissed the complaint. *Id.* On appeal, the plaintiffs cited *Knick* and argued that the Fifth Amendment abrogated Eleventh Amendment immunity. *Id.* at 733. The Sixth Circuit rejected that argument, noting that "*Knick* was a case against a municipality, and municipalities are not entitled to the protection of Eleventh Amendment immunity." *Id.* at 734.

The plaintiffs also relied on *PennEast* and argued that "the states consented to federal court jurisdiction or waived their immunity to takings claims by ratifying the Fifth and Fourteenth Amendments." *Id.* at 735. The court rejected that argument as well. *Id.* at 735-36. It noted that *PennEast* was "markedly different" from the plaintiffs' case. *Id.* at 735. The plaintiff in *PennEast* was exercising the federal eminent-

domain power, and "it is reasonable to assume" that federal-court jurisdiction extended to a suit between the federal government and a State. *Id.* But in *Skatemore*, "citizens of Michigan s[ought] compensation from the State of Michigan." *Id.* Therefore, "[t]he dispute [wa]s a purely intra-state matter," and if the court accepted the plaintiffs' arguments, it would "go beyond the holding of *PennEast*." *Id.* The court further explained that "to accept Plaintiffs' argument and hold that states waived their sovereign immunity in suits that invoke a right incorporated through the Fourteenth Amendment would destroy the protection the Eleventh Amendment was specifically ratified to provide." *Id.* at 736. "Future plaintiffs could claim any right incorporated through the Fourteenth Amendment is no longer subject to Eleventh Amendment immunity." *Id.* The plaintiffs filed a certiorari petition presenting the question, "Does the Fifth Amendment's requirement of 'just compensation,' as incorporated by the Fourteenth Amendment, waive Eleventh Amendment Sovereign Immunity for a takings claim in federal court against a state." *Skatemore, Inc., v. Whitmer*, No. 22-372, 2022 WL 12641100, at *i (U.S. Oct. 17, 2022). But the Supreme Court denied the petition. 143 S. Ct. at 527.

The reasoning of *Skatemore*, not *PennEast*, applies here. The federal government has not delegated its eminent-domain power to Ambriz, nor does his suit implicate any interstate dispute. He is a purely private citizen seeking money from his State's treasury. As the cases cited above in Part I.A.1 show, the Eleventh Amendment does not permit such a suit.

### B. Ambriz's claims are not ripe.

"Ripeness ensures that federal courts do not decide disputes that are premature or speculative." *DM Arbor Court, Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021). "Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). A plaintiff bringing a takings claim must show that the government's decision to take property is final, *Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226, 2230 (2021) (per curiam), and "a plaintiff's failure to properly pursue administrative procedures may render a claim unripe if avenues still remain for the government to clarify or change its decision," *id.* at 2231 (emphasis removed); *see DM Arbor Court*, 988 F.3d at 218 & n.2 (noting that *Knick* did not alter the requirement that the government make a final decision before a takings claim is ripe).

Ambriz's claim is not ripe because he has not shown that the Act will prevent him from recovering interest. Ambriz has admitted that he has not even initiated the claim process. ROA.18. And he has neither alleged nor demonstrated that he meets the Act's requirements to recover any of his property that may have been delivered to the Comptroller. *See* Tex. Prop. Code § 74.501(c) (noting that a claimant must provide the documentation required by the Comptroller). The Comptroller cannot evaluate Ambriz's yet-to-be-made claim and thus has made no final decision regarding the property's status. Accordingly, his claim is not yet ripe. *See Pakdel*, 141 S. Ct. at 2230-31.

A recent decision from a federal court in Delaware is instructive. Like Ambriz, the plaintiff in *Light v. Davis* alleged that a state law, "which precludes owners of unclaimed property from receiving interest earned on the property while it is in Delaware's possession, violates the Fifth and Fourteenth Amendments." No. CV 22-611-CJB, 2023 WL 6295387, at *1 (D. Del. Sept. 27, 2023) (mem. op.). The court explained that "any harm to Plaintiff would only come after multiple contingencies were first satisfied—including that Plaintiff would actually make a claim to the property, that he would thereafter submit evidence regarding ownership, and the State Escheator would then make a determination that this submitted evidence was sufficient." *Id.* at *9. It was thus "wholly speculative whether a future administrative process will result in Plaintiff being deprived of interest or just compensation on the Unclaimed Property at issue." *Id.* (quotation marks omitted). Moreover, the court recognized that "it cannot be the case that any citizen of that state—regardless of whether they have a viable claim to any actual unclaimed property—can challenge the statute's *bona fides*." *Id.* at *10. Accordingly, the court held that the claim was unripe. *Id.* The same is true for Ambriz's claims.

## C.  Ambriz lacks standing.

"As federal courts have limited jurisdiction, one invoking the courts' power must affirmatively demonstrate its presence." *Moss v. Princip*, 913 F.3d 508, 513 (5th Cir. 2019) (footnote omitted). Standing is "a component of subject matter jurisdiction." *James*, 2023 WL 7890069, at *3; *see United States ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 576 (5th Cir. 2023). To have standing, "the plaintiff must have suffered an injury in fact—a concrete and imminent harm to a legally protected

interest, like property or money—that is fairly traceable to the challenged conduct and likely to be redressed by the lawsuit." *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "To request prospective injunctive or declaratory relief, a litigant must demonstrate 'continuing harm or a real and immediate threat of repeated injury in the future.'" *James*, 2023 WL 7890069, at *4 (quoting *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992)). The plaintiff bears the burden of establishing standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021). Ambriz has failed to meet that burden for three reasons.

*First*, for reasons that overlap with the ripeness problems discussed above, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (noting the potential overlap in ripeness and standing concerns), Ambriz has not shown that he has suffered an injury in fact. An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation marks omitted). Ambriz has not shown an injury because his pleadings do not establish that the Act applies to him and will prevent him from recovering interest accrued on unclaimed property. Ambriz has alleged that "[a]ccording to the Comptroller's online records, [the Comptroller] holds Ambriz' s property in custody." ROA.17. Ambriz has further alleged that the Comptroller's website "describes that property as a 'savings account,' and it is in the amount of $25.00." ROA.17 (footnote omitted). Those allegations are insufficient to establish that the Comptroller actually holds Ambriz's property. Ambriz has relied solely on information he allegedly found on the Comptroller's website and has not explained how he knows that the website

entry pertains to him. He has not alleged, for example, that he searched the website because he had misplaced savings-account funds or that he has confirmed that the property listed on the website is his own. Quite the opposite. Ambriz has acknowledged that he has not "plead[ed], and no evidence supports, that he even knew about or remembered the savings account." Appellant's Br. 21-22. And as noted above, even if the entry refers to Ambriz's property, he has not demonstrated that he meets the Act's requirements to recover the property. Because Ambriz has neither alleged nor shown that any claim he might make with the Comptroller would succeed, he has shown no imminent harm.

*Second*, Ambriz has not shown an ongoing violation that would entitle him to prospective relief. As noted above, he argues that "he has already suffered an injury from the Comptroller's taking his property into custody and refusing to pay him just compensation. And, that injury is ongoing because the taking without just compensation continues until the Comptroller finally pays the just compensation." *Id.* at 17; *see* Appellant's Supp. Br. 2 (arguing that Ambriz "has not yet claimed his property such that he continues to suffer harm from the loss of the time value of his property"). That argument is squarely foreclosed by binding precedent from this Court. In *James*, the plaintiffs asserted that "an unconstitutional taking is an 'ongoing violation' for the purpose of seeking prospective relief when the government has failed to return a claimant's property." 2023 WL 7890069, at *5. But the Court explained that "[i]n fact, the *Arnett* line of cases reaches the opposite conclusion—that a prior taking is a past harm insufficient to confer standing for prospective relief, even when it is alleged that the government has unlawfully retained assets that rightfully belong

to the plaintiff." *Id.* Like the *James* plaintiffs, Ambriz has not shown that a future taking is likely to occur. *Cf.* Appellant's Br. 17 (arguing that the alleged taking occurred "as soon as the Comptroller took Ambriz's unclaimed property into custody and the State used it for public purposes"). Accordingly, Ambriz lacks standing. *See James*, 2023 WL 7890069, at *5; *Arnett*, 508 F.3d at 1134; *Arnett*, 515 F. Supp. 2d at 703-04.

*Third*, even if Ambriz had shown that the Comptroller holds his property and would approve his claim, Ambriz has failed to show an injury traceable to the Comptroller because any harm was the result of Ambriz's forgetfulness or neglect, not the Comptroller's efforts to preserve his property. After all, property subject to the Act is presumed abandoned because, for more than three years, "the location of the owner of the property is unknown to the holder of the property" and "according to the knowledge and records of the holder of the property, a claim to the property has not been asserted or an act of ownership of the property has not been exercised." Tex. Prop. Code § 72.101(a). That lapse is not attributable to the Comptroller. Had it not been for the Act and the Comptroller's compliance with its requirements, Ambriz's alleged property would presumably have remained unclaimed indefinitely. Because of the Act and the Comptroller's actions, Ambriz has the opportunity to recover his property. He cannot complain that the Comptroller injured him by preserving his property and investing it for the good of all Texans. Instead, any harm is traceable to Ambriz himself or to the holder who delivered the property to the Comptroller. Accordingly, Ambriz lacks standing. *See Nebraska*, 143 S. Ct. at 2365.

## II. Ambriz Failed to State a Takings Claim.

If the district court did have jurisdiction, it correctly dismissed Ambriz's claims under Rule 12(b)(6). *See* ROA.202-06, 274-75. "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must present enough facts to state a plausible claim to relief." *Collins v. Dep't of the Treasury*, 83 F.4th 970, 978 (5th Cir. 2023) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This Court "generally take[s] as true what a complaint alleges," but it does not "credit a complaint's legal conclusions or '[t]hreadbare recitals of the elements of a cause of action.'" *Id.* at 979 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The district court correctly held that Ambriz failed to state a claim for which relief can be granted because "Ambriz's assertion that the State's retention of any interest on his unclaimed property fails to state a takings clause claim." ROA.206; *see* ROA.274-75. There was no compensable taking here, just the Comptroller preserving and making beneficial use of unclaimed property that was presumed abandoned. And the decisions on which Ambriz relies are either distinguishable or wrongly decided.

### A. Well-reasoned precedent supports the district court's ruling.

Well over a century ago, the Supreme Court recognized that "the right to regulate the estates of absentees, both in the common and civil law, has ever been recognized as being within the scope of governmental authority," *Cunnius v. Reading Sch. Dist.*, 198 U.S. 458, 471 (1905), and that the Fourteenth Amendment did not deprive States of that power, *id.* at 475. More recently, the Court has reaffirmed that "States

as sovereigns may take custody of or assume title to abandoned personal property as *bona vacantia.*" *Delaware v. New York*, 507 U.S. 490, 497 (1993).

In *Texaco, Inc. v. Short*, the Supreme Court considered an Indiana law "providing that a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owner of the property." 454 U.S. at 518. The Court "recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time." *Id.* at 526. And the Court rejected the plaintiffs' argument that the statute "takes private property without just compensation in violation of the Fourteenth Amendment." *Id.* at 530. As the Court noted, "[i]n ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, th[e] Court has never required the State to compensate the owner for the consequences of his own neglect." *Id.* "It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Id.*

Relying on *Texaco*, a Texas appellate court has rejected a challenge like Ambriz's. In *Clark v. Strayhorn*, the plaintiffs sought class certification and argued that "the Comptroller's failure to pay interest when returning unclaimed property was an unconstitutional taking" under both the federal and state constitutions. 184 S.W.3d at 908. The trial court "determined that Clark had not asserted a viable takings claim, denied the motion to certify the class, and dismissed Clark's suit." *Id.* at 909. The court of appeals construed the Act and held that it "does not create a trust

relationship that would require the Comptroller to pay interest to owners." *Id.* at 913.

Turning to the plaintiffs' constitutional challenges, the appellate court discussed *Texaco* and held that "[o]nce the property is presumed abandoned, the State's lawful use of that property for its own benefit cannot be an unconstitutional taking." *Id.* at 914. The court rejected the plaintiffs' reliance on *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980). *Clark*, 184 S.W.3d at 914. As the court of appeals explained, in *Webb's* the Supreme Court "held unconstitutional a statute allowing a county to retain interest earned on an interpleader fund deposited in the registry of the court." *Id.* (citing *Webb's*, 449 U.S. at 163-64). But, as the *Clark* court pointed out, there was "an important distinction" between the interpleader funds at issue in *Webb's* and "the issue of interest earned on unclaimed property." *Id.* Whereas interpleader funds "are held in trust for the owner," unclaimed property is not. *Id.*; *see Webb's*, 449 U.S. at 164 (noting that the Court's holding applied "under the narrow circumstances of th[at] case"). The court of appeals concluded that *Texaco* applied rather than *Webb's* and held that "the State's use of unclaimed property and retention of any interest earned before the owner asserts a claim is not an unconstitutional taking." *Clark*, 184 S.W.3d at 915. As the court explained, "[u]ntil a missing owner asserts a claim, it is wholly appropriate for the Comptroller to use unclaimed property for the benefit of the State instead of allowing a windfall to a private holder or permitting the funds to lie fallow." *Id.* at 914-15.

Other courts have reached similar results. In an unpublished decision, a Third Circuit panel considered whether a Pennsylvania law "relieving the State from

having to pay interest earned on unclaimed property" imposed "a taking for which just compensation must be paid, pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution." *Simon v. Weissmann*, 301 F. App'x 107, 109 (3d Cir. 2008). The court explained that "[n]o one can reasonably question a state's power to escheat personal property under appropriate circumstances" and that "the common law doctrine of *bona vacantia* allows states to take control and dispose of abandoned property." *Id.* at 110. The court also noted that "courts have long applied the common law rule of interest follows the principal," *id.* (quotation marks omitted), but it was "satisfied that the rule of 'interest follows the principal' was never intended to apply to every situation involving personal property held by someone other than the property owner," *id.* at 111.

The court then turned to *Webb's*, which, according to the Third Circuit panel, stood for a "general rule" that "is normally applicable in those instances involving a recognized obligation of debt because one party currently possesses property in which title belongs to a second, known party." *Id.* at 111-12. But, as the court noted, the dispute before it was "not the usual and general case but whether interest generated from *abandoned* property constitutes a cognizable property right under the Fifth Amendment." *Id.* at 112 (quotation marks omitted). Under those circumstances, the court determined that "[t]he most analogous Supreme Court case is *Texaco*." *Id.* And, "under the rationale of *Texaco*, the Commonwealth of Pennsylvania has no obligation to pay interest on property which plaintiffs abandoned." *Id.* The court noted that its decision joined "the numerous other courts which have held that similar

unclaimed property statutes do not run afoul of the Takings Clause." *Id.* at 113 (collecting cases).

The court in *Light v. Davis*, the federal decision from Delaware discussed above in Part I.B, agreed with the Third Circuit panel in *Simon*. After examining *Simon* at length, *Light*, 2023 WL 6295387, at *11, the court concluded that it "d[id] not see how it can or should deviate from *Simon*'s holding," *id.* at *12. Rejecting the plaintiff's attempt to distinguish *Simon*, the court held that "whether the takings claim at issue is focused on the taking of that abandoned property itself or the taking of interest owed on that abandoned property, either way there can be no viable takings claim." *Id.* at *13.

The recent decision from a federal court in Florida on which Ambriz repeatedly relies (at 20, 23, 30) also shows why his claim lacks merit. In *Maron v. Patronis*, plaintiffs once again sought to represent a class and argued that the State could not decline to pay interest on unclaimed property. No. 4:22cv255-RH-MAF, at 1 (N.D. Fla. Sept. 5, 2023) (attached to appellant's brief). The court noted that Florida's law was actually more generous than the Constitution required it to be. *Id.* at 10. Rather than just "assume ownership of abandoned property," the statute gave "an owner unlimited time to reassert the owner's rights in the property—unlimited time to recover the principal value of previously unclaimed property." *Id.* Moreover, "Florida's seems a moderate, workable approach with benefits for both sides: Florida uses for a public purpose some of the funds it could have taken outright while preserving the owner's ability to get back what the owner essentially abandoned." *Id.* at 10-11. Relying on *Texaco*, *Simon*, and *Clark*, among other cases, *id.* at 10-12, the court held that

"it is constitutionally sufficient for Florida to return the principal of the Marons' unclaimed property without interest or other compensation," *id.* at 13; *see Dani v. Miller*, 374 P.3d 779, 794 (Okla. 2016) ("The State is not required to compensate a claimant for the consequences of their own neglect, and this includes interest their property might generate while temporarily in the custody of the State.").

Moreover, even if Ambriz would have otherwise been entitled to interest earned on the unclaimed property, he has failed to show a compensable taking here. That is because he has not alleged in his complaint that his neglected $25.00 was earning interest before it was delivered to the Comptroller or that it would have earned interest had it remained where it was. *See generally* ROA.8-24. Therefore, even if the State earned interest on its own investment of the property, Ambriz suffered no loss and thus has "no claim for a taking for which compensation is due." *Cwik v. Topinka*, 905 N.E.2d 300, 309 (Ill. App. Ct. 2009), *aff'd sub nom. Cwik v. Giannoulias*, 930 N.E.2d 990 (Ill. 2010). After all, "'just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain." *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 235-36 (2003). Ambriz has not shown that he lost anything, so no just compensation is required.

## B. Ambriz's authorities are distinguishable or wrongly decided.

In arguing that the State has violated the Takings Clause, Ambriz relies primarily on a line of outlying Seventh Circuit decisions and one Supreme Court case. None of them helps him.

*First*, Ambriz discusses (at 40-43) *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), and its progeny. In *Cerajeski*, the plaintiff "contend[ed] that the state's

retention of the interest is a taking that violates the takings (just-compensation) clause in the Constitution because the owner is paid nothing for his lost interest." *Id.* at 579. The court focused on the fact that, under the challenged Indiana statute, the State did not "seize unconditional title to abandoned property" but rather presumed the property abandoned and allowed the property to be claimed. *Id.* at 580-81. In the court's view, because the State did not take title to the unclaimed property, the interest had to follow the principal. *Id.* at 580-82. The court therefore held that the plaintiff was entitled to interest earned on her unclaimed property. *Id.* at 583; *accord Goldberg v. Frerichs*, 912 F.3d 1009, 1010 (7th Cir. 2019); *Kolton v. Frerichs*, 869 F.3d 532, 533 (7th Cir. 2017).

The primary problem with the reasoning of this line of cases is its inordinate focus on the difference between escheatment and the use of presumptively abandoned property. *See Cerajeski*, 735 F.3d at 582-83; *but see James*, 2023 WL 7890069, at *1, *2 (referring to the transfer of property under the Act as escheatment). In *Cerajeski*, the Seventh Circuit did not impugn the purpose of Indiana's law, which was to avoid a situation in which, "for want of an identified owner, the value of property is not being maximized." *Cerajeski*, 735 F.3d at 579. And it acknowledged that "the state can take abandoned property without compensation." *Id.* at 581. Rather, the court concluded that the plaintiff's unclaimed property had not been abandoned. *Id.* In other words, according to the court, if the State had taken title to the property, there would have been no taking, but because title remained with the plaintiff, the State could not withhold interest earned on the unclaimed property. *See id.* at 580-83.

But Ambriz has not challenged the Act's presumption of abandonment. *See* Tex. Prop. Code § 72.101(a). Nor has he brought any due-process challenge to the way his property was delivered to the Comptroller. This Court should not go beyond Ambriz's complaint and question the presumption of abandonment. Moreover, "[i]t is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right." *Texaco*, 454 U.S. at 530. So there is no reason to believe that what the State could unquestionably do through escheatment becomes unconstitutional when done through Texas's "more generous approach," *Maron*, No. 4:22cv255-RH-MAF, at 10, which gives Ambriz the opportunity to reclaim his property. In sum, *Texaco* does not support the Seventh Circuit's reasoning. *See id.* at 12 (noting that other decisions are "more faithful to *Texaco*" than the Seventh Circuit cases).

The Seventh Circuit's takings analysis may have been clouded by due-process concerns. In its seminal decision in *Cerajeski*, the court repeatedly noted that the plaintiff had been appointed a guardian. 735 F.3d at 579-81, 583. That seemed to cause the court worry that the state law was operating unfairly against someone whose property went unclaimed not through neglect but through incapacity. *See id.* at 581 (noting that the guardianship suggested that the plaintiff was "not competent to keep track of his property"), 583 (suggesting that the plaintiff may have been "incapable of keeping track" of the property). It may be that bad facts made bad law. But, in any event, Ambriz has neither alleged that he was incapable of keeping track of his property nor asserted a due-process claim.

*Second*, Ambriz relies (*e.g.*, at 46-49) on *Tyler v. Hennepin County*, 598 U.S. 631 (2023). In *Tyler*, a county sold the plaintiff's home "for $40,000 to satisfy a $15,000 tax bill." *Id.* at 634. "Instead of returning the remaining $25,000, the County kept it for itself." *Id.* The question before the Supreme Court was whether the "remaining value [wa]s property under the Takings Clause, protected from uncompensated appropriation by the State." *Id.* at 638. The Court held that the county "could not use the toehold of the tax debt to confiscate more property than was due." *Id.* at 639.

Far from helping Ambriz, the Court's reasoning in support of that unremarkable holding shows why the State's retention of interest on his unclaimed property is constitutional here. The Court distinguished *Texaco* because the law challenged in *Tyler* was "not about abandonment at all." *Id.* at 647. Minnesota's forfeiture scheme gave "no weight to the taxpayer's use of the property. Indeed, the delinquent taxpayer can continue to live in her house for years after falling behind in taxes, up until the government sells it." *Id.* The county was thus unable to "frame that failure [to pay taxes] as abandonment." *Id.* In contrast, "[i]n *Texaco*, the owners lost their property because they made *no* use of their interest for 20 years and then failed to take the simple step of filing paperwork indicating that they still claimed ownership over the interest." *Id.*

The district court correctly determined that *Texaco*, not *Tyler*, controls here. ROA.205-06. Like the plaintiff in *Texaco*, Ambriz made no use of his property, which led to its delivery to the Comptroller. And he has not challenged the constitutionality of that delivery. Unlike the county in *Tyler*, the Comptroller is not withholding from Ambriz a portion of the property. If Ambriz files a claim and provides the required

documentation, he will receive his full $25.00 back, and he has not suggested otherwise.

## Conclusion

Because the district court lacked subject-matter jurisdiction over all Ambriz's claims, this Court should affirm the portion of the district court's judgment that dismissed Ambriz's state-law claims and any federal claim seeking retrospective relief or damages without prejudice and remand with instructions for the court to dismiss the remaining claims without prejudice. If, however, the Court concludes that the district court had jurisdiction over Ambriz's prospective declaratory and injunctive claims, it should affirm the district court's entire judgment. The Comptroller also prays for any other relief to which he may be entitled.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Aaron L. Nielson
Solicitor General

Brent Webster
First Assistant Attorney General

/s/ Kyle D. Highful

Kyle D. Highful
Assistant Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Kyle.Highful@oag.texas.gov

Counsel for Defendant - Appellee

## CERTIFICATE OF SERVICE

On November 27, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Kyle D. Highful
KYLE D. HIGHFUL

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,659 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Kyle D. Highful
KYLE D. HIGHFUL